2016 UT App 89

## THE UTAH COURT OF APPEALS

2010-1 RADC/CADC VENTURE, LLC,
Appellee,
*v.*
DOS LAGOS, LLC; MELLON VALLEY, LLC; ROLAND NEIL FAMILY
LIMITED PARTNERSHIP; ROLAND N. WALKER; AND SALLY WALKER,
Appellants.

Opinion
No. 20140675-CA
Filed April 28, 2016

Second District Court, Farmington Department
The Honorable John R. Morris
No. 110700200

Clifford V. Dunn, Michael C. Dunn, Evan A.
Schmutz, and Jordan K. Cameron, Attorneys
for Appellants

Richard C. Terry and Jeremiah R. Taylor, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and KATE A. TOOMEY concurred.[1]

ORME, Judge:

¶1     This appeal comes to us from the district court's grant of
summary judgment in favor of 2010-1 RADC/CADC Venture,

---

1. Judge James Z. Davis heard the arguments in this case but did
not have the opportunity to vote on this Opinion prior to his
death. *See State v. Goins*, 2016 UT App 57, n.1. Judge Kate A.
Toomey substituted for Judge Davis and, having reviewed the
briefs and listened to the oral arguments, participated fully in
the court's resolution of this appeal.

LLC (RADC). Appellants challenge the summary judgment on a number of grounds. We affirm.


BACKGROUND

¶2     The pertinent facts of this case are undisputed. In 2007, Appellants Dos Lagos, LLC, and Mellon Valley, LLC, (Borrowers) received a $2.5 million loan from America West Bank. The loan was personally guaranteed by Appellants Roland N. Walker, Sally Walker, and the Roland Neil Family Limited Partnership (the Guarantors). Later that year, America West entered into a loan participation agreement with Utah First Federal Credit Union, whereby Utah First obtained a fifty-two percent interest in the loan and America West retained a forty-eight percent interest.

¶3     One year later, on December 5, 2008, Borrowers executed a Change in Terms Agreement, which, among other things, extended their promissory note (the Note) with America West. The Note was secured by real property owned by Mellon Valley (the Property).

¶4     The FDIC ultimately closed America West and seized America West's interest in the Note, which it thereafter sold to RADC at auction. Borrowers defaulted on the Note and received multiple letters notifying them of the default and requesting payment. In December 2010, RADC purchased the Property—which was valued at $1,510,000—at a trustee's sale for $1,060,000. At the time of the sale, the total amount owing on the Note was $3,426,701.91, leaving a deficiency of $1,916,701.91 between the amount owed and the value of the Property. Utah First, whose interest in the Note had not been affected by America West's demise and the transfer of its interest, filed an action seeking a deficiency judgment the next month.

¶5     In its original Complaint, Utah First was the only named plaintiff and it erroneously indicated that the total amount owed

on the Note was just $1,819,774.97.[2] Dos Lagos filed a motion to dismiss, in part because RADC was not included as a party. The parties stipulated to allow amendment, and the First Amended Complaint added RADC as a plaintiff. It did not, however, correct the amount owed. Utah First and RADC sought leave to amend again and filed the Second Amended Complaint in September 2012, alleging the amount due as the full $3,426,701.91.

¶6      RADC and Utah First filed motions for summary judgment, seeking a deficiency of $1,916,701.91. Borrowers subsequently filed a motion to dismiss and a motion for summary judgment. The district court denied Utah First's motion for summary judgment, determining that there were issues of fact surrounding the validity of the loan participation agreement that had been executed by Utah First and America West. But it granted RADC's motion for summary judgment against Borrowers, awarding RADC a deficiency judgment, calculated as the difference between the full amount due under the Note and the value of the property at the time of its sale to RADC, *see* Utah Code Ann. § 57-1-32 (LexisNexis 2010), subject to any subsequently determined interest of Utah First. The district court denied Borrowers' motion to dismiss and motion for summary judgment.

¶7      Shortly thereafter, RADC moved for summary judgment against the Guarantors on the ground that judgment had been awarded against Borrowers on the obligation guaranteed by the Guarantors. The district court granted the motion, and

---

2. RADC suggests that this amount represented Utah First's fifty-two percent interest in the total amount owed on the Note. But by our math, fifty-two percent of $3,426,701.91 is $1,781,884.99.

Borrowers and the Guarantors (collectively, Appellants) now appeal.[3]

ISSUES AND STANDARD OF REVIEW

¶8     Appellants first argue that RADC's claim did not relate back to the original Complaint and was therefore barred by the statute of limitations. They next contend that the district court erred by awarding RADC the full amount due under the Note rather than just its pro rata share. Finally, Appellants claim that it was error for the district court to grant summary judgment against the Guarantors. All of the issues raised involve the district court's interpretation and application of the law in granting summary judgment. "[W]e review the [district] court's legal conclusions for correctness, affording those legal conclusions no deference." *Ault v. Holden*, 2002 UT 33, ¶ 15, 44 P.3d 781.

ANALYSIS

I. RADC's Claim Was Not Time-Barred.

¶9     The resolution of Appellant's primary argument on appeal depends on the operation of the applicable statute of limitations. Section 57-1-32 of the Utah Code requires that "an action . . . to recover the balance due upon [an] obligation for which [a] trust deed was given as security" must be commenced "within three months after any sale of property under a trust deed." *See* Utah Code Ann. § 57-1-32 (LexisNexis 2010). Appellants argue that because RADC did not commence an action against Borrowers within three months of the trustee's

---

3. Utah First moved to voluntarily dismiss its claims without prejudice, which the district court allowed over Borrowers' objection. Utah First is therefore not a party to this appeal.

sale, its claim was barred before it joined the action via the First Amended Complaint.[4]

¶10   There is no dispute that RADC was not identified as a plaintiff in any complaint filed against Borrowers within three months of the trustee's sale. There is also no dispute that Utah First's original Complaint was filed within that three-month window. What we must determine, then, is whether the original Complaint operates to satisfy the three-month requirement for RADC as well as for Utah First.

¶11   Appellants contend that the First Amended Complaint impermissibly added a party to the proceeding in violation of the applicable statute of limitations. Rule 15(c) of the Utah Rules of Civil Procedure allows an amended complaint to "relate[] back to the date of the original pleading" if "the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Utah R. Civ. P. 15(c). Relying on the Utah Supreme Court's opinion in *Doxey-Layton Co. v. Clark*, 548 P.2d 902 (Utah 1976), Appellants argue that this rule generally does "not apply to an amendment which substitutes or adds new parties . . . whether plaintiff or defendant." *See id.* at 906.

---

4. Appellants also take issue with the district court's alternate conclusion that "even if the claims of RADC do not relate back to the original filing of the complaint, because the purposes of Utah Code Ann. § 57-1-32 have been satisfied, RADC's failure to comply with the statute did not constitute an absolute bar to the suit." Because we conclude that RADC's claim *does* relate back to the filing of the original Complaint, we need not consider the propriety of this alternate ruling. *See generally Weber v. Snyderville West*, 800 P.2d 316, 320 (Utah Ct. App. 1990) ("We may affirm the trial court on any proper ground.").

¶12   Of course, there are exceptions to this general rule. The principal exception is articulated in *Sulzen v. Williams*, 1999 UT App 76, 977 P.2d 497, where this court stated:

> [W]hile generally Rule 15(c) . . . will not apply to an amendment which substitutes or adds new parties for those brought before the court by the original pleadings, [the Utah Supreme Court has] made an exception to the general rule. The exception operates where there is a relation back, as to both plaintiff and defendant, when new and old parties have an identity of interest; so it can be assumed or proved the relation back is not prejudicial.

*Id.* ¶ 14 (alterations and omission in original) (citation and internal quotation marks omitted). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n.3 (1984) (considering the comparable federal rule). "The same general standard of notice applies regardless of whether a litigant seeks to add defendants, plaintiffs, or claims." *McClelland v. Deluxe Fin. Servs., Inc.*, 431 F. App'x 718, 723–24 (10th Cir. 2011) (considering the comparable federal rule). Here, the First Amended Complaint did nothing more than add RADC, a successor coholder of the very note Utah First had sued upon, as a plaintiff. It did not assert new claims. It therefore follows that when Utah First filed the original Complaint, seeking the deficiency between the amount owed on the Note and the value of the Property purchased by RADC at the trustee's sale, Borrowers received sufficient notice to satisfy the rationale of rule 15(c).

¶13   The sufficiency of the notice to Borrowers is further demonstrated by the identity of interest between Utah First and RADC. The cases cited by Appellants in relation to this point are unhelpful, as they address a framework that is inapplicable to

the facts of this case. For instance, Appellants suggest that because "RADC and Utah First are two separate and distinct entities," there can be no relation back. We acknowledge that it is often necessary to look at the connection between the business operations of the original and added parties, *see Russell v. Standard Corp.*, 898 P.2d 263, 265 (Utah 1995), but that factor alone is insufficient to resolve an identity-of-interest question. We cannot ignore the fact that although there is no direct business or ongoing contractual relationship between Utah First and RADC, this case centers around *one* debt, *one* promissory note, and *one* trustee's sale. In very simple terms, there is but one "conduct, transaction, or occurrence" on which all claims are based. *See* Utah R. Civ. P. 15(c). There is perhaps no closer identity of interest than that shared by two parties who are joint holders of the same note. *See generally Penrose v. Ross*, 2003 UT App 157, ¶ 16, 71 P.3d 631 ("[A]n identity of interest requires parties to have the 'same' interest.").

¶14    We also point out that as a policy matter, cases such as this one should be decided in a single action. *Cf.* Utah Code Ann. § 78B-6-901(1) (LexisNexis 2012) ("There is only one action for the recovery of any debt, or the enforcement of any right, secured solely by mortgage upon real estate and that action shall be in accordance with the provisions of this chapter."). So long as the rights of the parties are protected and the rules of law are followed—which they were here by the notice given to Borrowers via the initial Complaint and by the identity of interest between RADC and Utah First—our judicial system values judicial economy. *See Okelberry v. West Daniels Land Ass'n*, 2005 UT App 327, ¶ 11, 120 P.3d 34. By allowing the amendments to the original Complaint, the district court furthered this objective.

## II. It Was Not Error for the District Court to Award RADC the Full Deficiency Amount.

¶15    Appellants next challenge two aspects of the district court's order concerning the amount of the judgment. First, they

argue that the district court should not have awarded judgment in the amount sought by the Second Amended Complaint—the full deficiency amount—but should instead have limited any judgment to a sum calculated with reference to the amount claimed to be due in the original Complaint. Second, Appellants argue that it was error to award the entire deficiency judgment amount to RADC, even though the district court expressly made that judgment subject to any later-determined interest of Utah First. We conclude that the district court did not err in either regard.

A.    Plaintiffs Were Entitled to Recover the Full Deficiency Amount.

¶16    The original Complaint claimed that the total amount still due on the Note was $1,819,774.97. The First Amended Complaint, which added RADC as a plaintiff, left that amount unchanged. Finally, in the Second Amended Complaint, the amount due on the Note was updated to correct the full amount actually due on the Note and to state the amount still due following the sale of the land securing the Note—$1,916,701.91. When Plaintiffs moved for summary judgment, they sought a deficiency judgment in this amount.

¶17    Appellants point to the language of section 57-1-32 to argue that Plaintiffs were limited to pursuing the amount indicated in the original Complaint. Specifically, the statute mandates that "the complaint shall set forth the entire amount of the indebtedness." Utah Code Ann. § 57-1-32 (LexisNexis 2010). The question before us, as Appellants state it, is whether, based on that language, RADC "should have been estopped from arguing that the amount owing was more than what was originally plead[ed]."

¶18    A successful claim of estoppel would require, among other things, a showing that Appellants took reasonable action—or reasonably refrained from action—based on the misstatement of the amount of indebtedness included in the original

Complaint. *See Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 2011 UT 33, ¶ 41, 258 P.3d 539. According to Appellants, without citation to any portion of the record, "[Borrowers] did not engage in a trial and negotiation strategy that they would or could have employed had the total amount due under the note been originally asserted as the same amount as ultimately claimed." This is not the sort of inaction that is contemplated by the doctrine of estoppel.

¶19    But even if Appellants might have acted differently in the months following the filing of the original Complaint had it included the amount actually due, the Second Amended Complaint was filed in September 2012. The district court did not grant RADC's motion for summary judgment until April 2013. Thus, even ignoring the fact that Borrowers likely always knew—and surely should have known—the full amount owed under the Note, they had seven months between the filing of the Second Amended Complaint and the district court's order during which they could have "engage[d] in a [different] trial and negotiation strategy" when confronted with the increased amount, if so inclined. Because they did not do so then, there is no reason to assume they would have done so earlier. It was therefore not error for the district court to enter judgment based on the amount alleged in the Second Amended Complaint once that amount was proven.

B.    It Was Not Error for RADC to Receive Judgment Based on the Full Amount Due on the Note.

¶20    RADC had only a forty-eight percent interest in the Note, but the district court awarded the entire deficiency amount to RADC, albeit subject to any subsequently determined interest of Utah First. We acknowledge that, at first glance, it might appear that Appellants make a compelling argument. After all, it seems somewhat intuitive that as a forty-eight percent owner of the Note, RADC should have received judgment for only forty-eight percent of the amount still owing on the Note.

¶21    Appellants complain that the district court's order, making the judgment subject to any subsequently determined interest of Utah First, "cited no law." But after registering this complaint, Appellants direct this court to no statute, case, or other authority that supports their contention that the district court got this wrong. Appellants' failure to carry their burden of persuasion on appeal is a sufficient ground for us to reject this argument. *See Hi-Country Estates Homeowners Ass'n v. Jesse Rodney Dansie Living Trust*, 2015 UT App 218, ¶ 8, 359 P.3d 655.

¶22    We do briefly note, however, that it would be unjust to allow debtors to avoid responsibility for a substantial portion of their obligations simply because one of two creditors on a single debt takes the laboring oar in collecting the debt.[5] *See, e.g., Irons v. American Nat'l Bank*, 172 S.E. 629, 641 (Ga. 1933) ("Any one of the holders may foreclose, giving the notice required by law to all holders concerned."); *Zalesk v. Wolanski*, 281 Ill. App. 54, 55 (1935) (determining that "the plaintiff, as one of the note holders, under the terms of the trust deed, had the right to declare the whole amount of the indebtedness due and unpaid"). The district court determined that Borrowers owed $1,916,701.91 under the Note. How that amount is divided between RADC and Utah First is no business of Borrowers, provided that they are the only two holders of the Note and the judgment represents the total amount properly due under the Note. There is no dispute that the amount awarded by summary judgment is the total amount owed, and the qualifying language of the judgment recognizes the possible interest of Utah First and

---

5. Of course, the creditor who obtains a judgment would then have to account to the other creditor for its interest in the note or other instrument. *Cf. Joseph Nelson Supply Co. v. Leary*, 164 P. 1047, 1049 (Utah 1917) ("[A] person who claims the contract price, in whole or in part, which is due to the contractor . . . , takes the assignment subject to the claims for labor performed and material furnished to the contractor, which was by him used in the performance of his contract[.]").

protects Appellants from having to pay the debt twice—once to RADC and once to Utah First.

### III. Summary Judgment Against the Guarantors Will Not Be Disturbed.

¶23   Finally, Appellants contend that the district court erred by granting summary judgment against the Guarantors. Appellants' straightforward argument is that judgment was improperly granted against Borrowers on the underlying obligation and so the judgment against the Guarantors is likewise invalid. Appellants recognize that their arguments on behalf of the Guarantors rise or fall with their arguments on behalf of Borrowers, arguing that "if the judgment that forms the basis of the judgment against the guarantors is overturned, then the judgment against guarantors must also be overturned." Because we have declined to disturb the judgment against Borrowers, we have no occasion to disturb the judgment against the Guarantors.

### CONCLUSION

¶24   We reject Appellants' arguments on appeal. RADC was properly added as a plaintiff to the case in the First Amended Complaint because that amendment relates back to the original Complaint. The district court did not err by awarding judgment for the entire deficiency amount or by awarding that full amount to RADC, subject, of course, to its obligation to account to Utah First for its share of any proceeds recovered. Finally, Appellants have not demonstrated any reason why the judgment against the Guarantors should be disturbed.

¶25   Affirmed.

———————